IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN P. ARNONE, JR. | : | No. 4:06-CV-0644 |
| Plaintiff, | : | |
| | : | Judge John E. Jones III |
| v. | : | |
| | : | |
| LUZERNE COUNTY SHERIFF'S | : | |
| DEPARTMENT, *et al.*, | : | |
| Defendants | : | |

## **MEMORANDUM**

October 6, 2008

This civil rights suit arises out of the arrest of the plaintiff John Arnone following an incident at the Luzerne County Courthouse on March 31, 2004. Before the Court is the motion for summary judgment (Doc. 32) of the defendants the Luzerne County Sheriff's Department, Barry Stankus, George Kamage, Arthur Babbouine, Norman Sallitt, and Michael Vesek. For the reasons set forth below, the motion will be granted.

## **I.   STANDARD OF REVIEW**

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial.  *Id.* at 325.  Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e)(2).  An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law.  *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations of denials in its own pleadings; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).  The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial."  *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000).  Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion."  *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the facts and all reasonable inferences drawn therefrom must be viewed

in the light most favorable to the non- moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." *Anderson*, 477 U.S. at 247-48.

## II.   BACKGROUND

With this standard of review in mind, the following are the undisputed facts material to the present motion, drawing any reasonable inferences in favor of the non-moving party, Arnone.

On March 29, 2004, Luzerne County Deputy Sheriff Michael Vesek and several police officers from Hanover Township, went to at Arnone's residence to execute a bench warrant and capias for Arnone's arrest that had been issued for Arnone's failure to appear for his sentencing on a prior conviction scheduled on

that date.[1]  (Vesek Aff., Doc. 33-3, ¶ 1; Amend. Compl., Doc. 19, ¶ 3.)  Arnone's wife advised Deputy Vesek that he was in Harrisburg, and the officers left.[2] (Vesek Aff. ¶¶ 2-3.)  Arnone alleges that as he was traveling back from Harrisburg, he was informed that his picture was on the television news and that he was described as a violent and dangerous fugitive.  (Amend Compl. ¶ 3.)

The Sheriff's Office was subsequently informed that Arnone would be coming to the Luzerne County Courthouse on March 31, 2004, and because he was considered an unpredictable individual, provided a photograph of Arnone to courthouse security and directed that the Sheriff's Office be contacted if Arnone did come to the courthouse.  (Vesek Aff. ¶ 3.)  Deputy Vesek was notified when Arnone arrived at the courthouse on March 31, 2004, and proceeded, with backup, to the south entrance to the courthouse where he was informed by security that Arnone had gone to the basement level of the courthouse.  (Vesek Aff. ¶ 4; Aff. of Probable Cause, Doc. 33-8.)  Deputy Vesek and Sheriff Deputies Sallitt and

---

[1] Arnone's only response to the defendants' motion for summary judgment vaguely accuses the state courts and this Court of misconduct and states that Arnone "wishes that this case stand on Plaintiff's deposition and sworn statement."  (Doc. 39.) Pursuant to Local Rule 56.1, the material facts in the defendants' statement of material facts and supporting evidence will be deemed admitted.  *See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175-76 (3d Cir. 1990).

[2] Arnone alleges the officers were present at his home for "over two hours" while Deputy Vesek estimates they were there for "no more than thirty minutes."  (*Compare* Amend. Compl. ¶ 3 *with* Vesek Aff. ¶ 2.)  This disputed fact is immaterial to Arnone's claims.

Chesko proceeded down the south staircase to the basement while Sheriff's Deputies Bobbouine and Chaumpi proceeded down the north staircase. (Aff. of Probable Cause.) Security then informed the officers that Arnone was on the elevator. (*Id.*) The officers determined that, in order to avoid a public confrontation, they would take Arnone to the Sheriff's Office on the first floor of the courthouse to resolve his outstanding bench warrant. (Vesek Aff. ¶ 4.)

The officers approached Arnone at the elevator, and Arnone warned the officers not to "fucking touch me." (Aff. of Probable Cause.) Arnone was informed of the outstanding warrant and advised that the officers would escort him to the Sheriff's Office. (*Id.*; Vesek Aff. ¶ 5.) Arnone accompanied the officers onto the elevator, went up to the first floor, exited with the officers, and began walking toward the Sheriff's Office. (Vesek Aff. ¶¶ 6-7; Aff. of Probable Cause.)

Arnone then abruptly attempted to enter the Luzerne County District Attorney's Office, located directly across the hall from the Sheriff's Office. (Vesek Aff. ¶¶ 7-8; Aff. of Probable Cause.) Arnone was told by the officers not to enter the District Attorney's Office, and Deputy Vesek took Arnone's arm in an attempt to guide him to the Sheriff's Office. (Vesek Aff. ¶ 9.) Arnone then lunged toward the District Attorney's Office, and Deputies Vesek and Salitt attempted to restrain him. (Vesek Aff. ¶ 9; Aff. of Probable Cause.) Arnone broke away from

the officers and entered the District Attorney's Office, screaming words to the effect of "see what the fuck you are doing to me." (Vesek Aff. ¶ 10; Aff. of Probable Cause; Feissner Decl., Doc. 33-4, at 1; Prokopchak Aff., Doc. 33-5, at 2; Zezza Decl., Doc. 33-6, at 1.)

Arnone's appearance in the District Attorney's Office caused several employees to retreat from the reception area out of fear for their safety. (Aff. of Probable Cause; Feissner Decl.,; Prokopchak Aff., Doc. 33-5.) One employee, Kate Feissner, indicates that she hid in a closet after seeing Arnone angrily lunge at a coworker, and that she was "scared to death" that Arnone had a weapon and was going to harm her or her coworkers. (Feissner Decl. at 1-3.) Another employee, Sharon Prokopchak states that Arnone ran into the office and lunged toward her "red faced, enraged, with a paper, screaming ... 'what the fuck are you trying to do to me?'" (Prokopchak Aff. at 2.) Prokopchak states that "[t]here is no question in my mind that Mr. Arnone would have harmed Katie [Feissner] and myself" if the officers had not intervened. (*Id.* at 3.)

After Arnone entered the District Attorney's Office, Deputies Vesek and Sallitt tackled him to the floor in an attempt to subdue him and place him in handcuffs. (Vesek Aff. ¶ 10; Aff. of Probable Cause.) Arnone struggled with the officers and slammed the door to the District Attorney's Office backwards, nearly

6

hitting Feissner in the face and causing damage to the door and doorframe. (Vesek Aff. ¶ 11; Aff. of Probable Cause; Feissner Decl. at 1.) Chief Deputy George Kamage and Deputies Bobbouine, Chesko, and Chaumpi assisted Deputies Vesek and Sallitt in bringing Arnone under control. (Vesek Aff. ¶ 11; Aff. of Probable Cause.) During the two-to-three minute struggle, Arnone continued to resist, screamed words to the effect of "don't fucking touch me" and "you can't put handcuffs on me", and defecated in his pants. (*Id.*; Feisser Decl. at 1.) Arnone was handcuffed and shackled, taken into the Sheriff's Office, and then transported to the Luzerne County Correctional Facility. (Vesek Aff. ¶ 11; Aff. of Probable Cause.) As he was being led out through the courthouse rotunda, Arnone repeatedly screamed words to the effect of "I hope you like cleaning shit because I shit my fucking pants" and "somebody come and wipe my fucking ass." (Aff. of Probable Cause; Zezza Decl. at 1.)

Arnone alleges that news reports of the March 31, 2004 incident at the courthouse "ranged from threatening to shoot a Judge, sitting and defecating on a chair, attacking sheriffs, rampaging through the D.A. office, all false malicious lies." (Amend. Compl. ¶ 3.)

As a result of the incident, Arnone was charged with one count of resisting arrest, one count of institutional vandalism, and two counts of disorderly conduct.

(Criminal Compl., Doc. 33-7.) Arnone pled guilty to one count of institutional vandalism and two counts of disorderly conduct, and on January 28, 2005, was sentenced to time served and one year probation along with the following additional conditions: payment of fines and costs; restitution in the amount of $220.00; an agreement not to use drugs or alcohol; an agreement to participate in a mental health program and to sign up for same within fifteen days; an agreement to refrain from any contact with the Office of the District Attorney; and, an agreement to issue a letter of apology to the Office of the Sheriff. (Vesek Aff. ¶¶ 12-13; Court of Common Pleas Sentence, Doc. 33-9.)

Arnone alleges that as a result of the defendants' actions, he "faced false criminal charges, assault, slander, public humiliation and defamation of character" and that the defendants' actions violated his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments. (Amend. Compl. ¶ 3.) Arnone seeks "monetary relief and punitive damages." (*Id.* at ¶ 4.)

### III. DISCUSSION

#### A. Unnamed Defendants

Before turning to the merits of the plaintiff's claims, the Court must address the putative defendants named as "Unknown Deputies." Arnone's initial complaint named as defendants the Luzerne County Sheriff's Department, Barry

Stankus, George Kamage, and "5 unknown Deputies." (Doc. 1.) On July 5, 2006, Arnone filed an amended complaint naming as defendants the Luzerne County Sheriff's Department, Barry Stankus, George Kamage Arthur Babbouine, Norman Sallitt, Michael Vesek, and "Unknown Deputies." (Doc. 19.)

Fictitious names may be used until reasonable discovery permits the actual defendants to assume their places, but John and Jane Doe defendants must eventually be dismissed if discovery yields no identities. *See Parker v. United States*, 197 Fed. Appx. 171, 173 n.1 (3d Cir. 2006); *Aponte v. Karnes*, 2008 WL 360879, at *1 n.1 (M.D. Pa. Feb. 8, 2008); *Smith v. Lucas*, 2007 WL 1575231, at *8 (M.D. Pa. May 31, 2007).

The discovery deadline in this case was June 16, 2008. (Doc. 29.) Arnone has not amended his complaint or otherwise attempted to identify the unknown defendants, and given his prior amendments, it is clear he understands how to do so. Therefore, the Court will dismiss all claims against any "Unknown Deputies" pursuant to Fed. R. Civ. P. 21. *See K.K. ex rel Knowles v. Weeks*, 2007 WL 1455888, at *5 (M.D. Pa. May 15, 2007).

### B.  Excessive Force Claim

Although he asserts violation of various civil rights, the gravamen of Arnone's complaint is that the officers used excessive force during the March 31,

9

2004 incident at the Luzerne County Courthouse. This claim based on alleged excessive forced used during an arrest is properly analyzed under the Fourth Amendment. *Lora-Pena v. F.B.I.*, 529 F.3d 503, 505 (3d Cir. 2008) (citing *Graham v. Connor*, 490 U.S. 386, 398-99 (1989)).

The Third Circuit has summarized the standard for determining whether the use of force is an unlawful "seizure" under the Fourth Amendment as follows:

> In deciding whether challenged conduct constitutes excessive force, a court must determine the objective "reasonableness" of the challenged conduct, considering the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. Other factors include the duration of the officer's action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time. In evaluating reasonableness, the court must take into consideration the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation. Thus, the court should not apply the 20/20 vision of hindsight, but should instead consider the perspective of a reasonable officer on the scene.

*Couden v. Duffy*, 446 F.3d 483, 496-97 (3d Cir. 2006) (citations and internal punctuation omitted).

In this case, these considerations demonstrate that the officers' use of force in arresting Arnone was reasonable. The undisputed evidence establishes that, at the time of his arrest, Arnone posed an immediate threat to the safety of the

employees in the District Attorney's Office.  Arnone attempted to flee from the officers into the District Attorney's Office and actively resisted the officers' attempts to place him under arrest throughout the incident.  The officers reasonably responded to Arnone's aggressive and threatening outburst by taking him to the floor and handcuffing him.  No punches were thrown, no weapons were drawn, and even Arnone concedes that, aside from the alleged "mental drama" experienced, he sustained no injuries during the incident (Arnone Dep. at 51).  The undisputed facts allow only the conclusion that the officers' quick judgments made in response to Arnone's violent actions in a crowded public space were objectively reasonable.  The defendants are entitled to summary judgment on Arnone's Fourth Amendment claim.

### C.    Due Process Claim

Arnone's asserts a claim of violation of his due process rights, although he has never specified the basis for this claim.[3]  To the extent Arnone means to

---

[3] Arnone asserts a due process claim under the Fifth Amendment, which as the defendants correctly note, applies only to federal government action and not local government actors such as the defendants, *see Nguyen v. U.S. Catholic Conference*, 719 F.2d 52, 54 (3d Cir.1983).  However, given Arnone's *pro se* status, the Court will construe his due process claim as a claim under the Fourteenth Amendment.  *See Erickson v. Pardus*, --- U.S. ----, 127 S.Ct. 2197, 2200 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) ("A document filed *pro se* is to be liberally construed," and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."); *and see, e.g.*, *Kline v. City of Sunbury*, 2007 WL 3231959, at *2 (M.D. Pa. Oct. 29, 2007).

challenge the allegedly "false criminal charges" arising out of the March 31, 2004 incident, to which he pled guilty, such a claim is barred by the *Heck* doctrine. Under the doctrine acknowledged by the Supreme Court in *Heck v. Humphrey*, 512 U.S. 477 (1994), a civil rights plaintiff may not bring a constitutional claim "if success in that action would necessarily demonstrate the invalidity of the confinement or its duration," *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005), unless the plaintiff proves the sentence of confinement "has been reversed on direct order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus," *Heck*, 512U.S. at 486-87. Arnone has not proved that his conviction on the charges arising out of the March 31, 2004 incident was reversed, invalidated, or called into question by a federal court, and therefore, to the extent that his claims in the present action are premised on the invalidity of his conviction, they are barred by the *Heck* doctrine.

To the extent Arnone means to assert a procedural due process claim based on the "slander, public humiliation and defamation of character" allegedly caused by the defendants or the defendants' alleged dissemination of "the false bulletin" to the news, his claim also fails. It is well-settled that "reputation alone is not an interest protected by the Due Process Clause." *Hill v. Borough of Kutztown*, 455

F.3d 225, 236 (3d Cir. 2006). "Rather, to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest." *Id.* (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976)). Even assuming that Arnone was slandered or defamed by false statements from the defendants, he has not demonstrated the deprivation of any right sufficient to meet the "formidable barrier," *Clark v. Twp. of Falls*, 890 F.2d 611, 619 (3d Cir. 1989), of the stigma-plus test. *See, e.g.*, *Weist v. City of Philadelphia*, 2008 WL 151088, at *5-6 (E.D. Pa. Jan. 15, 2008) ("The Fourteenth Amendment's Due Process Clause does not protect individuals from police officers' baseless accusations. First, assuming without deciding that Wiest can prevail on his state-law defamation claim, defamation by a police officer does not violate the substantive portion of the Due Process Clause. Second, mere verbal threats or accusations of the type alleged to be at issue here are insufficient to constitute a violation of the Fourteenth Amendment's due process protections.") (citations omitted; collecting cases).

Finally, to the extent Arnone means to invoke substantive due process, his claim fails because "[t]he Fourteenth Amendment's 'generalized notion of substantive due process' does not apply where, as here, 'a particular Amendment provides an explicit textual source of constitutional protection against a particular

13

sort of government behavior.'" *Smith v. Dauphin County Adult Probation Dep't*, 2007 WL 2692320, at *9 n.10 (M.D. Pa. Sept. 12, 2007) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998)). An explicit source of protection is provided by the Fourth Amendment in the instant case, and so Arnone's claim must fail to the extent that is premised on substantive due process. *See id.*

### D. Eighth Amendment Claim

Arnone also asserts a claim under the Eighth Amendment. This claim fails because, as noted above, Arnone's allegations of excessive force used during his arrest are properly brought under the Fourth Amendment since the Eighth Amendment standard applies only after the state has complied with constitutional guarantees traditionally associated with criminal prosecutions. *See Lora-Pena*, 529 F.3d at 505 (citing *Graham*, 490 U.S. at 398-99). Arnone has asserted no other basis for an Eighth Amendment claim, and therefore, the defendants are entitled to summary judgment on this claim.

### E. Equal Protection Claim

Arnone also asserts an equal protection claim under the Fourteenth Amendment, but again provides no basis for such a claim. Presumably, Arnone means to argue some theory of selective enforcement. "A plaintiff who asserts an equal protection claim based on selective enforcement must demonstrate: (1) that

14

others similarly situated were selectively treated; and (2) that this selective treatment was based on an 'unjustifiable standard, such as race, or religion, or some other arbitrary factor or to prevent the exercise of a fundamental right.'" *McDuffy v. Marsico*, --- F. Supp. 2d ----, 2008 WL 3925167, at *4 (D. Del. Aug. 21, 2008) (quoting *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005)). Arnone has alleged no facts to support the argument that he was singled out for arrest based on any impermissible criteria, and given his aggressive and threatening actions, the officers certainly had a rational basis for making his arrest. The defendants are entitled to summary judgment on Arnone's equal protection claim.

### F.     Supervisory and Municipal Liability

Arnone names Luzerne County Sheriff Barry Stankus as a defendant, but does not allege any actions taken by Sheriff Stankus individually. "An individual government defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). Because Arnone has alleged no personal involvement by Sheriff Stankus in any alleged

constitutional deprivation, all claims against Sheriff Stankus in his individual capacity must fail.[4]

Arnone's claims against Sheriff Stankus in his official capacity (if any) and his claims against the Luzerne County Sheriff's Department are treated as claims against the municipality of Luzerne County. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n. 4 (3d Cir. 1997). A municipality cannot be held liable under § 1983 on a respondeat superior theory for an injury inflicted solely by its employees or agents. *Monell v. Dep't of Social Serv.*, 436 U.S. 658, 690, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. Thus, a plaintiff seeking to impose liability on a municipality under § 1983 must identify a municipal "policy" or "custom" that caused or was the "moving force" behind the plaintiff's injury. *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). A "policy" is a statement, ordinance, regulation, or decision emanating from the municipality's duly constituted legislative body or those

---

[4] In fact, Arnone has never specified the actions taken by any of individual defendants, and therefore, in addition to the grounds discussed above, his claims against all of the individual defendants fail for lack of allegations of personal involvement.

officials whose acts may fairly be said to be those of the municipality. *Id.* at 403-04; *Monell*, 436 U.S. at 690. A "custom" is a practice that has not been formally approved by an appropriate municipal decisionmaker, but which is so widespread, permanent, and well settled as to have the force of law. *Bryan County*, 520 U.S. at 404; *Monell*, 436 U.S. at 691. For liability to be imposed on the municipality under § 1983, there must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

As an initial matter, Arnone has failed to demonstrate any constitutional violation in this case, and therefore, no grounds exist for Luzerne County's liability. Moreover, Arnone has not alleged any policy or custom of Luzerne County which was the "moving force" behind any of his alleged constitutional deprivations, and therefore, no basis exists for municipal liability. The defendants are entitled to summary judgment.

## IV.  CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment will be granted, and judgment entered in their favor on all claims. An appropriate order will issue.